Rickenbach Estate.

Argued September 30, 1943. Before MAXEY, C. J., DREW, LINN, PATTERSON and STEARNE, JJ.

*John R. Bredin,* with him *Dalzell, McFall & Pringle,* for appellant.

*Albert C. Hirsch,* of *Hirsch & Shumaker,* with him *Ben Paul Brasley,* of *Brasley, Rubin, Balter & Cole,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, November 22, 1943:

This appeal involves the construction of a will. The question is whether the interest herein is vested or contingent.

Testatrix, a widow, was survived by three children: Edna Brosie, Viola Kendrick and Raymond Rickenbach. She directed payment of her debts and funeral expenses; devised one piece of real estate to Edna and another to Viola; by the fifth item she bequeathed her *residuary per-*

*sonal estate* to Edna and Viola share and share alike, providing that upon the death of either daughter *before* her death such share was to pass to such deceased daughter's "then living issue", and if no such grandchild survived, then such deceased daughter's share to go to the surviving daughter (Both daughters survived their mother, and the personal estate was divided between them). By the sixth clause, the *residuary real estate* was devised to three named trustees, of whom the appellant is the surviving trustee. This item is the only one in question. Its applicable words are as follows: "Said property is to be sold as soon as it can be sold without sacrificing the same, and the proceeds, . . . are to be divided between my two daughters, share and share alike; provided, however, that the then living lawful issue of either daughter shall take their Mother's share in the event of her death, . . . Until said real property is sold I direct that the said Trustees shall manage the same, collect the rents and distribute the net proceeds monthly between my two daughters, share and share alike; provided, however, that the then living lawful issue of either daughter shall take their Mother's share in the event of her death. . . ." By item eight she directed: ". . . In the event the provisions of my Will are questioned, and it is legally determined that the disposition of property hereinabove set forth is not in accordance with the law, then I give, devise and bequeath all of my property, of every kind, whether received from my late husband or not, to my two daughters absolutely. . . ."

Viola, one of the daughters, died without issue, after the death of the testatrix. She was survived by her husband (appellee) who was bequeathed her entire estate and named as executor. Appellee petitioned for, and secured, an order upon appellant (his wife's surviving sister) as surviving testamentary trustee under her mother's will, for an accounting of the rents from the trust of the residuary real estate. Appellee claimed a

*vested* one half interest in the trust through the will of his deceased wife. Appellant resisted the order for accounting. She contended that her brother-in-law possesses no interest in the trust. Appellant maintains that her deceased sister, who died *after* the death of testatrix without issue, possessed but a *contingent* interest, which lapsed because of her death without issue before the proceeds were realized and distributed, and which under Section 15 (c) of the Wills Act of 1917, P. L. 403, 20 PS Section 253, passed to appellant as the *other* residuary devisee or legatee.

The court below decided that the appellee possessed a vested interest because (1) the share absolutely vested in interest *at the date of the death of testatrix;* (2) that there was a separate and antecedent gift of principal, independent of the direction and time for payment, which is *implied* because of the gift of income from the realty, without express provision for the disposition of the residue; (3) that there was no lapsing of Viola's interest as her interest was vested at her mother's death, and hence Section 15 (c) of the Wills Act of 1917, supra, has no application; (4) that the direction to convert the real estate and divide the proceeds did not defer the *vesting of interest*—distribution being merely postponed for convenience of the daughters and preservation of the estate.

We do not agree that under the terms of this will there was an *absolute* vesting in interest as of the date of the death of testatrix. The quality of this estate is best illustrated by *Carstensen's Estate,* 196 Pa. 325, 46 A. 495. There the remainder was "to my brothers and sisters, the child or children of any who may then be dead to take the parent's share". A brother died without issue. It was held that the brother's remainder was vested, subject to be divested, should he die leaving children; that because such event had not occurred, his remainder was not divested. Were this construction not complicated by other considerations, we would be constrained to hold that Viola's share was vested, subject

to be divested should she die with issue—which she did not—and that therefore her interest had not been divested. See *Waln's Estate,* 228 Pa. 259, 77 A. 458; *Massey's Estate,* 235 Pa. 289, 83 A. 1087; *Neel's Estate,* 252 Pa. 394, 97 A. 502; *Rau's Estate,* 254 Pa. 464, 98 A. 1068; *McCauley's Estate,* 257 Pa. 377, 101 A. 827.

Testatrix made no gift over in the event that Viola should die without issue. Neither is there anything in the will from which survivorship may be *implied.* There is no *lapsed* bequest because Viola did not die in her mother's lifetime. Section 15 (c) of the Wills Act of 1917, supra, only applies where the beneficiary dies *in the lifetime of testatrix.* It does not affect an undisposed of share: *Knox's Estate (No. 2),* 328 Pa. 188, 195 A. 34.

Whatever doubt which may exist concerning the construction of this will arises because of testatrix's direction to sell the real estate and to *divide the proceeds.*

There are perhaps no more technical and perplexing problems of will construction than those found in the commonly termed "pay and divide" cases. Chief Justice KEPHART observed in *Alburger's Estate (No. 2),* 274 Pa. 15, 117 A. 452, that while the numerous adjudicated cases appear in accord in enunciating the correct legal principles, yet they do not always appear to be harmonious in *applying* the principles to the varying language, in context, in the numerous wills construed. On p. 18 he wrote: ". . . it would be more than difficult for the writer of this opinion to follow the finely spun threads of difference used in emphasizing the distinguishing element of each". Justice SCHAFFER (later Chief Justice) "sympathetically quotes" this statement with approval: *Hood's Estate,* 323 Pa. 253, 259, 186 A. 740. A study of the present will, and the re-examination of the cases, confirms the force and accuracy of these authoritative observations.

We have repeatedly decided that where there is a direction to pay and divide, but there is no separate and antecedent gift which is independent of the direction and

time for payment, the legacy is *contingent*. The reason for the rule is that the gift itself is only *implied from a direction to pay*. Such a gift is necessarily inseparable from the direction, and hence must partake of its quality. If the direction is future and contingent so must the gift be.

The rule is illustrated in the early case of *Moore v. Smith*, 9 Watts 403, where the words are: ". . . pay unto my grandson £100 . . . as soon as he arrives to be twenty-one years of age". It was held that such bequest was contingent, and lapsed upon the death of the grandson before attaining that age. Had the gift been made to the grandson, but payment deferred until he arrived at that age, it would have been vested. In the first illustration it was solely the direction to pay that *constituted* the bequest, hence the *vesting in interest* was postponed. In the second, there was a separate and antecedent gift, but merely a *deferment of possession*. The principal appellate cases are: *Reiff's Ap.*, 124 Pa. 145, 16 A. 636; *Kountz's Est.*, 213 Pa. 390, 62 A. 1103; *Rosengarten v. Ashton*, 228 Pa. 389, 77 A. 562; *Evans's Est.*, 264 Pa. 357, 107 A. 731; *Hildebrant's Est.*, 268 Pa. 132, 110 A. 760; *Alburger's Est. (No. 2)*, supra; *Berg's Est.*, 96 Pa. Superior Ct. 125; *Feeney's Est.*, 293 Pa. 273, 142 A. 284; *Scott's Est.*, 301 Pa. 509, 152 A. 560; *Hood's Est.*, supra.

There are many other cases, however, which held that even though there be no other gift than the direction to pay or distribute in futuro, if such gift or distribution appears to be postponed for the convenience of the fund or property, or to let in some other interest, the *vesting* will not be deferred until the period in question. The question is one of substance and not of form. Such intent must be gathered from the *entire will*. The inquiry is not restricted to the particular words in which the gift is made. Thus in *McClure's Appeal*, infra, the bequest was to the widow for life and upon her death ". . . my real estate to be sold and equally divided amongst my nephews and nieces. . . ." It was held that the remain-

ders were *vested* because it was *"manifest from the whole face of the will"* that a division upon the widow's death was *not* intended to be a *condition precedent to vesting* but was merely a postponement of the time fixed for enjoyment. See *McClure's Appeal,* 72 Pa. 414; *Man's Est.,* 160 Pa. 609, 28 A. 939; *Thomman's Est.,* 161 Pa. 444, 29 A. 84; *Ritter's Est.,* 190 Pa. 102, 42 A. 384; *Rau's Est.,* supra; *Stocker's Est.,* 260 Pa. 385, 103 A. 885; *Marshall's Est.,* 262 Pa. 145, 105 A. 63; *Jennings's Est.,* 266 Pa. 60, 109 A. 544; *Groninger's Est.,* 268 Pa. 184, 110 A. 465; *Edelman's Est.,* 276 Pa. 503, 120 A. 457; *Brown's Est.,* 289 Pa. 101, 137 A. 132; *Wallace's Est.,* 299 Pa. 333, 149 A. 473; *Lloyd's Est.,* 326 Pa. 230, 192 A. 98; *Knerr's Est.,* 130 Pa. Superior Ct. 383, 197 A. 528.

We do not agree with the court below that, in the present language, there exists a separate and antecedent gift which is independent of the direction and time for payment. Neither can such gift be *implied* therefrom. True a gift of income without limit of time is an absolute vested bequest of the corpus itself: *McKinstry's Estate,* 296 Pa. 185, 145 A. 806; *Estate of Henry Osborn,* 88 Pa. Superior Ct. 7; *Emmerich Estate,* 347 Pa. 307, 310. But the gift in this will *is* limited in time. The income was given only *"until said real property is sold"*. Furthermore, it is provided that if a daughter dies, her share is to be paid to her "then living lawful issue". Thus such payment of income to a daughter is only to be continued until the real estate is sold, and pending such sale, is limited to the *life* of the daughter.

However, from a careful consideration of the language of the entire will, we are convinced that the court below correctly concluded that testatrix's deferments in distribution was *not intended to operate as a condition precedent to vesting.* The estates bequeathed to the daughters, as above indicated, were vested, subject to be divested should either die leaving issue after the death of testatrix but before the real estate was sold and the proceeds divided. As the daughter Viola died, without issue, her estate was not divested.

This view is strengthened when it is considered that if the view of appellant were adopted, and Viola's share be regarded as *contingent,* it would lead to an intestacy. It is a well settled canon of construction that an interest is to be construed contingent *only* when it is impossible to construe it vested: *Rau's Est.,* supra; *Brown's Est.,* supra; *Weir's Est.,* 307 Pa. 461, 161 A. 730; *Lafferty's Est. (No. 1),* 311 Pa. 455, 167 A. 44. There is a presumption in favor of vesting: *Shaw's Est.,* 326 Pa. 456, 191 A. 159. Furthermore, *the absence of a gift over* upon the decease of a daughter without leaving issue is an indication of vesting, especially if intestacy would result: *McCauley's Est.,* supra, at 381. It is likewise significant that in disposing of her residuary *personal estate* testatrix passed an *absolute vested estate* to her two daughters in the event that they survived her—as they did.

Appellee, being possessed of a vested interest in one half of this trust and being the sole executor of his deceased wife's estate, may demand and receive an accounting from the surviving testamentary trustee. The estate of his deceased wife is entitled to one half of all unpaid income until the date of her death. Appellee, as sole beneficiary under his wife's will, is thereafter entitled to one half of all net income until the real estate is sold, and to one half of the corpus upon such conversion.

We cannot, however, affirm the decree as entered upon the opinions filed by the court. It was error to decide that "upon confirmation of the account to be filed by the trustee, the trust will be terminated and the trustee discharged". This trust must continue, according to its terms, until the real estate is sold and the proceeds divided. Appellant and appellee are not the only parties in interest. Should the *appellant* die leaving issue before such sale and distribution *her* interest would be divested. As some of the parties in interest cannot as yet be ascertained, those who may happen to be living may not alone agree to terminate the trust: *Lewis's Est.,* 231 Pa. 60, 79 A. 921; *Henry's Est.,* 53 Pa. Superior Ct. 57; *Stew-*

*art's Est.,* 253 Pa. 277, 98 A. 569; *Bennett's Est.,* 270 Pa. 397, 113 A. 685; *Buch's Est.,* 278 Pa. 185, 122 A. 239; *Johnson et al. v. Provident Tr. Co. of Phila.,* 280 Pa. 255, 124 A. 436; *Reighard's Est.,* 283 Pa. 140, 128 A. 847.

The decree of the court below directing an accounting, as herein modified, is affirmed. The costs in this appeal to be paid from the principal of the trust.